In the Fourth Court Of Appeals

Fourth Court Of Appeals District

San Antonio Texas Bexar County

2015 MAY -4 PM 2:41

Maryann Castro

v.

Manuel Castro

Re: Court Of Appeals Number: 04-14-00785-CV

Trial Court Case 2011 –CI-15957

## MOTION FOR RELIEF ON THE AGREEMENT FOR FINAL DIVORCE SIGNED ON OCT 30 ,2013 BY JUDGE CANALES

Here Comes Maryann Castro Appellant Pro-Se in Appeals Court filing a Motion Of Relief date 5/4/2015.

Appellant Maryann Castro has submitted to the Appeals Court Evidence of Fraud Committed By Appellee Manuel Castro and The non-Spouse Mistress Christina Pacheco.

A)Comparative Market Analysis prepared for Manuel Castro by Archie Marmolejo All season realty a friend of The Non spouse Mistress Christina Pacheco showing martial home 1501 Olive a realtors opinion 351,375 this is a broker opinion or Comparative Market Analysis and should not be considered an appraisal this was done to harm and hurt Appellant Maryann Castro overvalue the Community with a realtors opinion.

B)Reporters record volume 1 of 1 volume trial court cause no.2011-ct-15957 Sept 29,2014 showing Dinorah Diaz and Counsel Joseph Appelt both knew Appellee Manuel Castro the stay in bankruptcy was not lifted on Oct 30,2013 and that was to cause harm against Appellant Maryann Castro and Counsel Dinorah Diaz testifying for Appellee Manuel Castro and Non spouse Mistress Christina Pacheco involvement in the Agreement for Final Divorce signed Oct 30,2013 this was done to hurt and harm Appellant Maryann Castro.

C)Certified Appraisal of 1501 Olive st showing value of 225,000 actual value not a realtors opinion this is justice that was not allowed to be told in Court by Counsel Joseph Appelt he continued filing motion to sell the martial home by overvaluing the Community to hurt and harm Appellant Maryann Castro.

D)Active Bankruptcy Of Manuel Castro Motion of stay lift was not filed on Oct 30,2013 Both Counsel Appelt and Diaz lied under oath on Sept 29,2014 saying that Judge Canales knew of Bankruptcy and Lift stay was filed on Oct 30,2013 it was never filed. It was filed by Appellant Maryann Castro on July

16,2014 she had to hire Malaise Law firm in order to proceed in divorce with Appellee Manuel Castro with intent to harm and hurt Appellant Maryann Castro with fraud in the Agreement for Final Divorce Signed Oct 30,2013.

E)Hiding a martial Asset Appellee Manuel Castro and Counsel Joseph Appelt hid a 99 Subaru and Keogh Plan Pension and filed a motion for final divorce decree with intent to hurt and harm Appellant Maryann Castro knowing Appellant Maryann Castro was challenging the Agreement for fraud

F)Notice of default and intent to Accelerate BSI Financial Appellee Manuel Castro was not paying the home mortgage and in the agreement for final divorce it states he is to pay his bankruptcy which was the home mortgage and he defaulted and attempted to collect 40,000 knowing he was in active bankruptcy and was not paying the home mortgage and did not tell the court on Oct 30,2013 with the intent to hurt and harm Appellant Maryann Castro.

G)Appellee Manuel Castro Active Bankruptcy chapter 13 dated 9/5/14 and in this hearing the motion for relief from stay and against co-debtor 1501 Olive street Appellee Manuel Castro was not Communicating with Appellant Maryann Castro about the interest of losing the martial home to bankruptcy and non-payment of mortgage this document was given to Appellant Maryann Castro by Counsel Sarah Lishman Appellant Maryann Castro was not given her right to protect her homestead and her interest Appellee Manuel Castro was trying to proceed fraud in collecting 40,000 by having counsel Appelt enforce sell of martial home that was awarded to Appellant Maryann Castro.

Appellee Manuel Castro And Counsel Joseph Appelt hid from the Court and Appellant Maryann Castro the active bankruptcy on Oct 30,2013.

Appellee Manuel Castro And Counsel Joseph Appelt hid from the Court and Appellant Maryann Castro Appellee Manuel Castro was not paying the home mortgage on the martial home they shared but expected to collect 40,000 on fraud equity using a Comparative Market Analysis-Realtors opinion overvalued the Martial Home.

Appellee Manuel Castro and Counsel Joseph Appelt hid a martial asset the following a 99 Subaru and Keogh Plan Pension.

Appellee Manuel Castro and Counsel Joseph Appelt Appellee Brief was due April 29,2015 and had not been filed in a timely manner which is not fair to Appellant Maryann Castro who has submitted Appellants brief in a timely manner with references that show proof of fraud, martial misconduct committed by Appellee Manuel Castro.

Appellant Maryann Castro is praying the Court grants her the relief she is entitled to and award her the following.

Appellant is praying the Appeals Court awards her the 11,000 in Johnson Control retirement to be paid to BSI Financial.

Appellant Maryann Castro is praying the Court awards her spousal maintence in the Amount of 1300 monthly for 10 years Appellee Manuel Castro makes 22 Dollars hourly and makes 70,000 yearly Appellant Maryann Castro is disabled and her income is 864 monthly.

Appellee Manuel Castro and Appellant Maryann Castro were married for a time in the amount of 28 years, Appellant Maryann Castro is disabled and became disabled within the marriage began July 21, 1984 and Appellant Maryann Castro became disabled in 2001.

Appellant Maryann Castro prays for the Court to award her the 99 Subaru.

Appellant Maryann Castro prays for the Court to award her Appellant Maryann Castro share of the Keogh Plan Pension that was hidden from her.

Appellant Maryann Castro prays for the Court to award her 20,000 in Attorney fees to be paid by the non-spouse mistress Christina Pacheco who is part of the lawsuit and Appellee Manuel Castro for the fees that were charged to Appellant Maryann Castro that was caused by Appellee Manuel Castro and Non Spouse Mistress Christina Pacheco for Committing fraud with the intent to hurt and harm Appellant Maryann Castro. ( Cival Rico ) ( Cival Conspiracy )

Appellant Maryann Castro prays for the Court to grant her the relief in the Agreement for final Divorce signed Oct 30,013 there is no equity in the Amount of 40,000 a realtors opinion was used to overvalue the martial home and Appellant Maryann Castro prays for the Court to void the Agreement for final Divorce not to sale her homestead the martial home that was awarded to her on Oct 30,2013.

Appellant Maryann Castro prays for the Court to grant her relief and Justice on the Agreement for Final Divorce signed Oct 30,2013.

*Maryann Castro* 5/4/15

Maryann Castro Pro se Appellant

1501 Olive

Jourdanton Texas 78026

8304960133

Pacattitude2014@ GMAIL.COM



# Comparative Market Analysis

## Property At:

*Prepared For:*
Manuel Castro
1501 Olive
Jourdanton, TX 78026

*Prepared By:*
Archie Marmolejo
All Season Realty





SERVING SOUTH TEXAS
**All Season Realty**

Office Phone: (830) 281-5263
Direct Line: (210) 347-7330
Personal Fax Number: (210) 569-6211
Email: marmolejoarchie@aol.com

*THIS IS A BROKER PRICE OPINION OR COMPARATIVE MARKET ANALYSIS AND SHOULD NOT BE CONSIDERED AN APPRAISAL. In making any decision that relies upon my work, you should know that I have not followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation.*

# Seller's Statement

## Property At:

**Prepared For: Manuel Castro**
**1501 Olive**
**Jourdanton, TX 78026**

*Suggested Marketing Price:* **$351,375**

B

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) | IN THE DISTRICT COURT |
| MANUEL G. CASTRO | ) | |
| AND | ) | BEXAR COUNTY, TEXAS |
| MARY ANN CASTRO | ) | 45TH JUDICIAL DISTRICT |

**HEARING ON MOTION TO DECLARE AGREEMENT FOR FINAL DIVORCE VOID**

On the 29th day of September, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Laura Salinas, Judge Presiding, held in San Antonio, Bexar County, Texas.

Proceedings reported by computerized stenotype machine.

## APPEARANCES

JOSEPH P. APPELT
SBOT NO. 00789809
Joseph P. Appelt, P.C.
5825 Callaghan Road, Suite 104
San Antonio, Texas 78228
Telephone: (210)375-1212
Attorney for Petitioner

SARAH ANNE LISHMAN
SBOT NO. 24086267
JAMIE L. GRAHAM
SBOT NO. 24027335
310 S. St. Mary's Street, Suite 845
San Antonio, Texas 78205
Telephone: (210)308-6448
Attorney for Respondent


TINA PACHECO, Pro Se Respondent

INDEX

Statements of Counsel............................... 4

WITNESS                DIRECT    CROSS

MARIA DINORAH DIAZ       9          16

Court's Ruling..................................... 31

Court Reporter's Certificate....................... 34

(September 29, 2014, 9:12 a.m.)

THE COURT: Cause Number 2011-CI-15957. Can I have everyone identify themselves for the record, please?

MS. LISHMAN: Sarah Anne Lishman for Mary Ann Castro. She's the movant in this case.

THE COURT: Okay.

MR. APPELT: Joseph Appelt representing Manuel Castro, the respondent to their motion, the petitioner in the original cause. Also present is Manuel Castro and, technically, pro se is Christina -- your last name.

RESPONDENT PACHECO: Pacheco.

MR. APPELT: Pacheco. Who had been interpled as a third party defendant during the divorce. But I'm ready for Manuel Castro.

THE COURT: Okay. And, so, Ms. Lishman, this is your motion, correct?

MS. LISHMAN: Yes, Your Honor. This actually is the fourth time that we've brought this matter to court. It's a motion to declare agreement for final divorce void.

Basically, the parties entered into an agreement for final divorce about a year ago, on October 30th, 2013, and we believe that that agreement

is void as a matter of law because at that time there was a bankruptcy pending. Mr. Castro was the debtor in bankruptcy, and there was no lifting of the automatic stay for the purpose of dividing the property that was subject to the bankruptcy court jurisdiction at that time, as is required by law.

The last time that we were here we spoke in chambers. So just to get on record a timeline of events, basically, this divorce was filed in 2011. Thereafter, Mr. Castro filed for bankruptcy. Temporary orders were entered in this matter, I think in 2012 -- maybe 2011 or 2012. But under the terms of those temporary orders, Mr. Castro was required to make mortgage payments on the marital residence, which he failed to do so. And since that time no mortgage payment has been made for the residence that Mrs. Castro is residing in and still currently residing in.

This agreement was entered -- was -- it's a handwritten agreement, October 30th, 2013, and the issue is that there was no lifting of the automatic stay, so we believe it's void as a matter of law.

The other issue is that this agreement was signed by or purports to be signed by all the parties and Judge Canales, but there's no recitation that this was actually a rendition of final judgment, and there

was no record made. There's no judge's notes from that day and this agreement was never filed.

So there's no evidence that this agreement was ever a rendition of final judgment. And, so, we believe because it was not rendered, there's no ministerial duty binding on the Court to enter a final order on the terms of this agreement.

THE COURT: Okay. And I have the cases.

MS. LISHMAN: Door versus State was the case on point, and then I also handed you, last time, another case citing, York versus State, for the same proposition, that an agreement or an order entered in violation of the stay is void as a matter of law. York versus State is a Texas Supreme Court case.

And if -- and also for the issue of rendition, I brought another case -- it's Gamboa v. Gamboa -- saying that rendition of an order is an oral pronouncement in open court or it has to be in a written and filed memorandum. And at this time we believe there's no evidence that there is a written and filed memorandum, and no evidence that there was an oral pronouncement.

THE COURT: Okay. Well, let me, I guess, hear from Ms. Diaz first. But I did look into all these issues. So if you want to go ahead and call her as a

witness.

MR. APPELT: Yeah. I call Dinorah Diaz. She should be sitting right outside.

MS. LISHMAN: And, Your Honor, I just wanted to express to the Court, I think I mentioned this last week, but just so it's on the record, I am objecting to her testimony. I think it's a conflict of interest because at the time she was representing Mrs. Castro. I feel that if she's being called as a fact witness now she has a clear conflict of interest, and I also believe that her testimony is easily covered by the attorney/client privilege.

And I'm also objecting to her testimony on the basis of hearsay, because anything that she would have to testify that would prove that there was an oral pronouncement on this is hearsay. It's an out-of-court statement made for the truth of the matter, and, so, all of it would be hearsay, Your Honor.

THE COURT: Okay. You can bring her in.

MR. APPELT: And I've got Judge Canales on subpoena, too, Judge, but --

(Pause)

MS. LISHMAN: Your Honor, while we're waiting for her, I'm not sure -- in a prior hearing on this matter I invoked the Rule, so if there's any other

witnesses I'd like to invoke the Rule.

THE COURT: Anybody else that's going to testify?

MR. APPELT: The only one might be Manuel Castro, but that's going to be it, Judge.

THE COURT: All right. Raise your right hand, please.

(Witness sworn)

THE COURT: State your name for the record, please.

THE WITNESS: Maria Dinorah Diaz. D-I-A-Z.

THE COURT: And, Ms. Diaz, I understand you represented Ms. Castro previously in this matter?

THE WITNESS: Yes, Your Honor.

THE COURT: Okay. So I don't want you discussing anything that is attorney/client related. It's a very narrow scope and it's going to be strictly with regards to the appearance in court -- the appearance in presiding court October 30th, 2013 in front of Judge David Canales, and that's it.

THE WITNESS: Yes, Your Honor.

THE COURT: All right. You may proceed.

MR. APPELT: May I approach the court reporter to get an exhibit --

THE COURT: Yes.

MR. APPELT: -- marked, Judge? Actually, before I do that, Judge, let me ask a couple of questions.

MARIA DINORAH DIAZ,

being first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. APPELT:

Q. Ms. Diaz --

A. Yes, sir.

Q. -- you are here because I subpoenaed you; is that correct?

A. Yes, sir.

Q. You did not volunteer to come here. You are -- but for my subpoena, you would not be here; is that correct?

A. Correct.

Q. A fair statement?

And for the benefit of -- I guess I know the Court knows and the attorneys know, but what is the effect if a witness disobeys a subpoena? What can happen to that witness?

A. Well, they can get found in contempt. They can be arrested and held in the Bexar County Jail overnight to ensure that they appear in court.

Q. And in my questioning I don't want to go anywhere near any type of attorney/client discussions at all. It's just going to be about procedural aspects of what you recall occurred on or about October 30th of 2013.

MR. APPELT: And with that, may I approach the witness, Your Honor?

THE COURT: You may.

Q. (BY MR. APPELT) Ms. Diaz, I'm going to hand you what's been previously marked Petitioner's Exhibit Number 1. I believe it consists of four pages. And flip through there, please, if you would, and when you're done I have some questions for you about it.

A. (Witness complying) Yes.

Q. Do you recognize Petitioner's Exhibit Number 1?

A. Yes.

Q. And what do you recognize that to be?

A. An agreement for a final divorce regarding Manuel Castro and Mary Ann Castro.

Q. And at the time that this agreement was entered, were you Mary Ann Castro's attorney of record?

A. Yes, sir.

Q. Did you participate that day, on or about October 30th, in the negotiations between the parties which resulted in this handwritten agreement?

at all in this final agreement.

THE COURT: All I'm deciding is whether this agreement -- I'm not going to deal with the substance of the agreement, merely whether this was a final divorce or not. That's the issue before me.

Q. (BY MS. LISHMAN) Ms. Diaz, does this agreement for final divorce dispose of all of the issues that were pending in this divorce, to your recollection?

A. I believe so.

Q. Is it generally a common practice for attorneys to address issues pending from temporary orders in a final order?

A. I guess it depends on the case.

Q. So, hypothetically speaking, if there was about $20,000 owed under temporary orders, is that an issue that an attorney would put in the final order?

A. It depends.

Q. What does it depend on?

A. It depends on what the parties want, what they agreed to and what's discussed, and whether or not it's relevant and whether or not -- and I don't really want to get into the attorney/client discussions with Ms. Castro, but it would depend on those things, too.

Q. At the time -- October 30th, 2013, at the time you wrote this agreement for final divorce, were you

aware that Mr. Castro was in bankruptcy at that time?

A.   It was represented to me, yes, ma'am.

Q.   Did you have any reason to believe he was not in bankruptcy at that time?

A.   No, ma'am.

Q.   And were you aware that with the bankruptcy pending that all property was subject to the bankruptcy court jurisdiction?

A.   The property concerning real estate, that that was listed in the bankruptcy, yes.

Q.   And does that include the residence on Olive Street -- 1501 Olive Street?

A.   Yes.  I believe it did.

Q.   And, so, as an attorney, is it common practice to make dispositions of property that are subject to a bankruptcy court's proceeding?

A.   If there is a lift stay.

Q.   Was there a lift stay in this case?

A.   It was represented to me that there was and there was a document at -- a document that was presented to me at the time.  And there were those representations made to the Court.  And as an officer of the Court, when representations are made by attorneys, then we usually, you know, believe them.

Q.   Who made the representation to you that the

stay had been lifted?

A. Opposing counsel.

Q. And that's Mr. Appelt?

A. Yes.

Q. And when did he make that representation?

A. Well, I think -- I don't know if it was that day or if it was prior. I know that that was one of the issues as to why it was, you know, taking a long time.

Q. And did you, yourself, do any due diligence to follow up on that to ensure that the stay had been lifted?

A. I did the due diligence necessary.

Q. And what does that entail?

A. To review the document that was given to me and taking the word of counsel.

Q. And what document was that?

A. It was a letter or paper. I don't remember.

Q. And, so, you also testified that there was a representation made to the Court that the stay had been lifted. Are you saying that it was represented to Judge Canales on October 30th, 2013 that the stay in bankruptcy was lifted?

A. That's what I believe, yes.

Q. Why do you believe that?

A. Because that was one of the issues.

Q. But do you have any specific memory of it being represented on that day to the Court, to Judge Canales, that there was a bankruptcy pending and that the stay had been lifted?

A. You know, I don't recall. It could have been at, maybe, a temporary order or -- you know, hearing. I'm not sure.

Q. Do you recall if the bankruptcy was mentioned in front of Judge Canales at all on October 30th, 2013?

A. I think it may have been. I believe it was, but I'm not certain.

Q. And have you subsequently learned that the stay in the bankruptcy was not actually lifted?

A. Yes.

Q. And, so, is there -- is there any obligation on you, as the attorney that entered into this agreement with your client, to correct or reform that deficiency?

MR. APPELT: I'm going to object to the relevance for the purpose of this hearing, Judge, 'cause it's --

THE COURT: Sustained.

Q. (BY MS. LISHMAN) The terms of this agreement require Ms. Castro to refinance the marital residence on Olive Street within a certain period of time. Is that correct?

A.    That's what was ordered by the Judge, and we reduced it to writing and included it in the decree, yes.

Q.    So the sole disputed issue was the time period for refinancing the marital residence.  Is that correct?

A.    That's what I recall.

Q.    And are you recalling based on your actual memory or from reviewing this written agreement?

MR. APPELT:  Judge, I believe that was asked and answered about 10 minutes ago.

THE COURT:  Sustained.

Q.    (BY MS. LISHMAN) Is it your -- was it your understanding at the time this agreement was written by you and signed by the parties that all of the terms of this agreement could have been performed by your client, specifically that she could have refinanced the home with the bankruptcy pending at that time?

MR. APPELT:  Judge, I'm going to object again.  I don't -- as I recall, the purpose of this hearing was not to get into the substance of the agreement.  It was to whether or not this was actually proved up, the divorce, that is, before Judge Canales in open court.

THE COURT:  Sustained.

Q.    (BY MS. LISHMAN) Did you put on any proof that

day from your recollection or not -- I guess -- the term "put on proof" refers to putting it on the record; is that correct?

A.    Not necessarily.

Q.    Do you remember on that day if the specific items on this agreement for final divorce were discussed with Judge Canales prior to him signing this agreement?

A.    What do you mean by "discussed"?

Q.    Well, you testified that you established the residency requirements, the jurisdictional requirements for getting a divorce in Texas.  Is that correct?

A.    Come again.

Q.    When you went before Judge Canales you established the residency requirements and the jurisdictional requirements for a divorce in Texas.  Is that correct?

A.    Meaning me or the parties?  Like the attorneys together, yes.

Q.    When you were in front of Judge Canales on October 30th.

A.    Yes.  I believe Mr. Appelt asked the questions of his client.

Q.    And do you recall if the specific provisions dealing with divisions of specific items of property were discussed with Judge Canales prior to him signing

C



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
8165 FM 2146
9.45 Acres, J. Poitvent Survey #1, Abstract 1239
Jourdanton, TX 78026

### FOR:
Advantage Mortgage
6601 Blanco Road, Suite 100
San Antonio, Texas 78216

### AS OF:
December 19, 2005

### BY:
Angela R. Overlay
13730 Adobe Walls Drive
Helotes, Texas 78023

(210) 695-4400

# Uniform Residential Appraisal Report

Castro, Manuel
File # 8306

There are **3** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **225,000** to $ **255,000**.

There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **220,000** to $ **240,000**.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 1501 Olivo St. Jourdanton | 5920 FM 1332 Jourdanton | | 231 Hayden Road Pleasanton | | 770 Tom Road Pleasanton | |
| Proximity to Subject | | 2.38 miles | | 3.42 miles | | 6.15 miles | |
| Sale Price | $ Refinance | $ 240,000 | | $ 220,000 | | $ 224,250 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 133.85 sq.ft. | | $ 85.64 sq.ft. | | $ 90.42 sq.ft. | |
| Data Source(s) | | MLS#512184/Agent | | MLS#546896/Agent | | MLS#547580/Agent | |
| Verification Source(s) | | Deed Records | | Deed Records | | Deed Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Cash | | Conventional $0.00 | | Conventional $0.00 | |
| Date of Sale/Time | | 02/05 | | 09/05 | | 08/05 | |
| Location | Good | Good | | Good | | Inferior/Out | +10,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 9.45 Acres | 25 Acres | -22,500 | 1 Acre | +20,000 | 10 Acres | |
| View | Countryside | Countryside | | Countryside | | Countryside | |
| Design (Style) | 1-Story | 1-Story | | 1-Story | | 1-Story | |
| Quality of Construction | Average | Average | | Good | | Average | |
| Actual Age | 0 | 17Yrs/5 Effect. | +5,000 | 5 Years | +5,000 | 0 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade Room Count | Total 6 / Bdrms 3 / Baths 2 | Total 6 / Bdrms 3 / Baths 2 | | Total 9 / Bdrms 4 / Baths 2.5 | | Total 9 / Bdrms 4 / Baths 3 | |
| Gross Living Area | 2,397 sq.ft. | 1,793 sq.ft. | +18,120 | 2,569 sq.ft. | -3,000 | 2,480 sq.ft. | -4,000 |
| Basement & Finished Rooms Below Grade | None | None | | None | -5,160 | None | -2,490 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central H&A | Central H&A | | Central H&A | | Central H&A | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | Pad Parking | Pad Parking | | 2-Car Garage | -5,000 | 2-Car Garage | -5,000 |
| Porch/Patio/Deck | Porches | Porches | | Porches | | Porches | |
| Fireplace | Fireplace | Fireplace | | Fireplace | | Fireplace | |
| | | Metal Barn | -10,000 | Swimming Pool | -10,000 | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ 9,380 | | ☒ + ☐ - $ 1,840 | | ☐ + ☒ - $ 1,490 | |
| Adjusted Sale Price of Comparables | | Net 3.9 % Gross 23.2 % $ 230,620 | | Net 0.8 % Gross 21.9 % $ 221,840 | | Net 0.7 % Gross 9.6 % $ 222,760 | |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) **San Antonio MLS**

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s) **San Antonio MLS**

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | See Comments Below. | | | |
| Price of Prior Sale/Transfer | | None | None | None |
| Data Source(s) | | | | |
| Effective Date of Data Source(s) | | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject is under construction and has not transferred in the past 36 month period. The sales used in this appraisal have not transferred in the 12 months prior to the above noted transaction.

Summary of Sales Comparison Approach  Equal emphasis was given all sales. Sale 1 was superior in acreage and metal work shop. It was inferior in age and living area. Sale 2 was inferior in acreage and age, but superior in baths, living area, garage and swimming pool. It was inferior in value because it was located out in the county. It was superior in baths, living area and garage. Sale 3 was equal in site size, closed over 6 months ago and to go over 6 miles for comparable sales due to the low density of development in the subject's market area and the need for home sales on acreage tracts. The subject is considered a "mini ranch" and these types of residential properties are becoming increasingly popular in the market.

Indicated Value by Sales Comparison Approach $ **225,000**

Indicated Value by: Sales Comparison Approach $ **225,000**  Cost Approach (if developed) $ **228,790**  Income Approach (if developed) $ **N/A**

Greatest emphasis was given the market data approach, because it best reflects the actions of buyers and sellers in the marketplace. The cost approach also supports the value. The income approach was not used due to insufficient rental data necessary to develop an indication of value.

This appraisal is made ☐ "as is", ☒ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  None

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ **225,000** , as of **December 19, 2005** , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005

Page 2 of 6

Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

D

Exhibit A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE: §    CASE NO.: 12-52696G
§
MANUEL GUADALUPE CASTRO JR. §
§
Debtor §

TRUSTEE'S AMENDED OBJECTION TO MOTION TO
LIFT STAY TO PROCEED WITH DIVORCE
AND REQUEST FOR HEARING

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, Mary K. Viegelahn, Chapter 13 trustee and files this, her Chapter 13 Trustee's Amended Objection to the above-referenced Motion.

The Chapter 13 Trustee does not approve the afore-mentioned motion for the following reasons:

The Trustee opposes the Motion to Lift Stay to proceed with Divorce filed July 16, 2014 by Malaise Law Firm on Maryann Castro's behalf. The Debtor and Maryann Castro have previously entered into an agreement for final divorce on October 20, 2013. Both Debtor and Ms. Castro were represented by counsel and signed the agreement. The Trustee asserts the parties cannot re-litigate the terms of the agreement including the terms of the property settlement.

WHEREFORE, the Trustee requests the Court deny the motion for the reasons stated above and set it for hearing on the next available hearing date. The Trustee further asks the Court for any other relief to which she may be entitled.

Dated: July 29, 2014

Respectfully submitted,

/s/ Jessica L. Hanzlik
JESSICA L. HANZLIK  TSBN: 24055661
STAFF ATTORNEY FOR THE CHAPTER 13 TRUSTEE
jhanzlik@sach13.com
1050 Heritage Blvd, Ste. 201
San Antonio, TX.  78216
(210)824-1460  fax: (210) 824-1328

E

*[Handwritten at top: I'm not signing this fraud agreement - Request Trial]*

NO. 2011 CI 15957

IN THE MATTER OF
THE MARRIAGE OF

§
§
§

IN THE DISTRICT COURT

MANUEL G. CASTRO
AND
MARY ANN CASTRO

§
§
§
§

45TH JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

## FINAL DECREE OF DIVORCE

On October 30, 2013 the Court heard this case.

*Appearances*

Petitioner, MANUEL G. CASTRO, appeared in person and through attorney of record, JOSEPH P. APPELT, and announced ready for trial.

Respondent, MARY ANN CASTRO, appeared in person and through attorney of record, DINORAH M. DIAZ, and announced ready for trial.

Third party Respondent, TINA PACHECO, appeared in person and announced ready for trial. *[Handwritten: Commited fraud on the The girl friend who martial property - (Lets suit)!!]*

*Record*

The making of a record of testimony was waived by the parties with the consent of the Court. *[Handwritten: I didnt wave record of testimony,]*

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. *[Handwritten: FALSE   Attorney Diaz refused to correct her error]*

The Court further finds that, at the time this suit was filed, Petitioner had been a

1

interest, and claim in and to that property:

H-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-2. All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-3. All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

H-4. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.

*I do Not agree the agreement is Fraud*

H-5. All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the husband's name.

H-6. The 1999 Subaru motor vehicle, together with all prepaid insurance, keys, and title documents.

*→ He bought with Foreclosure money, his Attorney lied said I committed fraud! lied SAid*

Property to Wife

IT IS ORDERED AND DECREED that the wife, MARY ANN CASTRO, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

3

same date, but signed on _____October 5, 2014_____.

_____Janet Littlejohn_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

Joseph P. Appelt, P.C.
Attorney at Law
5825 Callaghan Rd. Ste. 104
San Antonio, TX 78228
Tel: (210) 375-1212
Fax: (210) 375-1213

By: _____
JOSEPH P. APPELT
Attorney for Petitioner
State Bar No. 00789809

M. Dinorah Diaz
Attorney at Law
2325 Vance Jackson
San Antonio, Texas 78213
Tel: (210) 341-3488
Fax: (210) 341-3762

*The Law Offices of Jamie L. Graham*
*Tel.: (210) 308-6448*

By: _____
DINORAH M. DIAZ Sarah Anne Lishman
Attorney for Respondent
State Bar No. 05804750
24086267

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Petitioner

_____
Respondent

13

F



10/09/2014

Sent Via Certified Mail
9307 1100 1170 0770 3512 90

MANUEL G CASTRO JR
1501 OLIVE ST
JOURDANTON, TX 78026-2220

Loan Number:        44675
Property Address:    1501 OLIVE STREET
                     JOURDANTON, TX 78026

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear MANUEL G CASTRO JR:

This letter is formal notice by BSI Financial Services, Inc. (herein as "BSI") the Servicer of the above-referenced loan, on behalf of MLB SUB I, LLC that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 12/01/2011 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $73,967.02, which consists of the following:

| | |
|---|---|
| Next Payment Due Date | 12/01/2011 |
| Total Monthly Payments Due: | $66,367.76 |
| (35 @ $1,732.72) | |
| Late Charges | $4,204.26 |
| Other Fees: | $3,395.00 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | $73,967.02 |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BSI paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $73,967.02. If the default, together with additional payments that subsequently become due, is not cured by 11/13/2014, BSI will accelerate the note so that the entire debt is immediately due and payable, and take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BSI offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at (800) 327-7861, Monday-Wednesday 8 am to 8 pm EST, Thursday 8 am to 6 pm EST, Friday 8 am to 5 pm EST, Saturday 8 am to 12 pm EST. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any



TX_NOI
Page 1 of 3

9307 1100 1170 0770 3512 90

G

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas

Bankruptcy Case No.: 12–52696–cag
Chapter No.: 13
Judge: Craig A. Gargotta

IN RE: Manuel Guadalupe Castro, Jr. , Debtor(s)

## NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing will be held

at     S.A. Courtroom 3, Hipolito F. Garcia Fed Bldg & Courthouse, 615 E. Houston St., San Antonio, TX 78205

on     9/29/14 at    09:00 AM

Hearing to Consider and Act Upon the Following: (Related Document(s): 63 Motion for Relief from Stay And Against Co–Debtor (1501 Olive Street, Jourdanton, TX 78026)(14 Day Objection Language) ( Filing Fee: $ 176.00 ) filed by Angela K. Randermann for Creditor BSI Financial Services, as Servicer for Wells Fargo Bank, N.A. (Attachments: # 1 Affidavit # 2 Exhibit)) Hearing Scheduled For 9/29/2014 at 09:00 AM at SA Courtroom 3 (Esquivel, Maria)

Dated: 9/5/14

Yvette M. Taylor
Clerk, U. S. Bankruptcy Court

( 210) 472-5186
6700

[Hearing Notice (BK)] [NtchrgBKap]

025169                              7490502519401

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                                          § CASE NO. 12-52696-CAG-13
MANUEL GUADALUPE CASTRO, JR.                    §
    DEBTOR                                      § CHAPTER 13
                                                §
                                                §
BSI FINANCIAL SERVICES, AS SERVICER             §
FOR WELLS FARGO BANK, N.A. ITS                  §
SUCCESSORS AND ASSIGNS                          §
    MOVANT                                      §
                                                §
VS.                                             §
MANUEL GUADALUPE CASTRO, JR.,                   §
DEBTOR, MARY CASTRO, CO-DEBTOR                  §
AND MARY K. VIEGELAHN, TRUSTEE                  
    RESPONDENTS

## DEFAULT ORDER LIFTING AUTOMATIC STAY AND CO-DEBTOR STAY AS TO 1501 OLIVE STREET, JOURDANTON, TX 78026

CAME ON before the Court for consideration the Motion for Relief from Automatic Stay of Act Against

Property filed by **BSI FINANCIAL SERVICES, AS SERVICER FOR WELLS FARGO BANK, N.A., ITS**

**SUCCESSORS AND ASSIGNS** (Movant) in the above-styled proceeding against Debtor and Co-Debtor, Mary

Castro . It appearing to the Court that proper notice to interested parties has been provided under law, including local

Bankruptcy Rules 4001 and 9013, and that no party has appeared in opposition to Movant's Motion, it is accordingly: